Case No. 13-7119, City of New York Appellant v. National Railroad Passenger Corporation, Amtrak. Mrs. Schor for the Appellant, Mr. Jarko for the Appellant. Good morning, Mr. Schor. Good morning, and may it please the Court, my name is Scott Schor. I represent the City of New York. The issue here is what happened to the 1906 Maintenance and Repair Deed Covenant during the Rail Act conveyance process. Under settled principles of bankruptcy law, the conveyance of the Bronx land free and clear of any liens and encumbrances to... Let me just stop you right there. Yes. When you settled principles of bankruptcy law assumes a conclusion, assumes a conclusion directly contrary to a holding of our court in Ray. That was respectfully, Your Honor, not the holding of Ray. The issue in Ray was quite different, and it was very limited. The issue was whether Conrail could be liable for personal injury claims brought by employees of a predecessor railroad who And Conrail argued, let's use, look for the Bankruptcy Act. And our court concluded when Congress passed the Rail Act, they did not rely solely on the Bankruptcy Act. Why is that not clearly a holding? This court looked at the plain language of lien and encumbrance in that Rail Act provision 743B2. It didn't go any further than the plain language, and no party in that case asked this court to look at the phrase free and clear of any liens and encumbrances in the bankruptcy context. They did cite, one party did cite 363, Your Honor. Conrail did, but it was for a different point. They wanted... It was for a point of eliminating personal claims. That's right. We rejected that. We said, look, this statute, the Rail Act, is broader than the bankruptcy statute. It's, it implies the eminent domain power of the federal government. This court did not address the eminent domain power in the bankruptcy act. That's not what this court said in Ray. This court said, this court rejected Conrail's argument that the Rail Act provision should be interpreted as broadly as 363F under the bankruptcy code. Our argument is different. Our argument is that the broader provision, Bankruptcy Code 363F, would not permit a conveyance free and clear of lien and encumbrances to destroy a real, a covenant running with the land. And if that's... Lien and encumbrance in Ray. You, this court looked at Black's Lauderdale scenario and cited permanent mission for doing that. But again... Is that the same definition that's being argued by the opposition here, right? That's, that's correct, Your Honor, but... So why aren't we bound by our precedent of how we construe liens and encumbrances? That was dicta, Your Honor. In the pursuit of the Rail Act. I understand. That was dicta... I believe that was dicta, Your Honor, because the result would have been the same, whether this court was looking simply at the Black's Lauderdale scenario definition from 1951, or if this court was looking at free and clear of liens and encumbrances in the bankruptcy reorganization context. You're saying this statement, as Ray persuasively argues, however, because 743B2 of the Rail Act uses different terms than does 363F, the Bankruptcy Code and interpretation of the latter statute does not inform our reading of the former. This, this court was accepting an argument that Ray had made in its brief. And in Ray's brief, it's very clear what they're arguing about. What they're arguing... I don't have to go back to look at the brief. I just look at our opinions. Right. But this court was accepting an argument made in a brief. And in the Ray brief, it's very clear that what Ray was saying is that it's not right to interpret 77 in the Rail Act as broadly as 363. Our argument is different. Rail Act... But we didn't say broadly or narrowly. We said it doesn't inform at all. Well, this... Under the... After this court decided Ray, the Supreme Court decided FAA versus Cooper, and made it very clear that when interpreting statutory phrases whose meaning depends upon context, it's important to look at the context, not just turn to Black's Law Dictionary. This is the same section for the court in Ray. It may be a different section, but are we really going to go through and use a different definition for the same words in the same statute with respect to different sections? FAA versus Cooper says this court should do that. This court should. It should? Yes. It says that. It wasn't a bankruptcy case. Did they deal with two sections of the same statute? We're talking about the same... Did FAA and V. Cooper deal with... No, they weren't. That's right, Your Honor. You are asking us to say that we should define the same term differently with respect to two different applications. I'm saying, Your Honor, that this court did nothing more than look at the plain language, and didn't have to go beyond that in Ray, and no one was asking this court to go beyond that in Ray. Maybe it would help us if you assume, or if we were allowed to assume that somehow you could distinguish Ray and explain to us why you think we should come up with a different answer here. Well, the answer, Your Honor... By the way, FAA versus Cooper was subsequent to this decision, to this court's decision in Ray. That's a general concept of statutory interpretation. It doesn't apply directly to this. It certainly applies to this, because... No, it's not directly applied. It's a general statutory interpretation. They weren't talking about the Rail Act in FAA versus Cooper. Absolutely. But the general principle should apply, that it's important to look at the context. Why don't you take the presiding judge's invitation to go explain, because frankly, I think you're in a weak position, even without Ray. All right, Your Honor. In the bankruptcy reorganization context, a sale of real property in the debtor's estate, free and clear of any liens or encumbrances, transfers the monetary value of liens and encumbrances, and we're often talking about creditor security interests, to the sale proceeds. The purchaser receives the real property without the debtor's liabilities to those secured creditors, but subject to covenants that run with the land, subject to deed-based, non-monetary property interests that run with the land. That's the standard meaning of this phrase in the bankruptcy context. That's what it meant under Section 77. That's what it means under Section 363, respectfully, Your Honor. We still believe it sheds light on Section 77. Excuse me. And there's a clear difference for treating secured creditors and beneficiaries of covenants differently. Secured creditors have a monetizable interest in the land that can attach to the proceeds. Here, what the covenants do is they become ripe. It depended on whether Amtrak ever breached the covenant in the deed. Are you suggesting there is no money value to your alleged covenant running with the land? There is money value, Your Honor, but it's not easily monetizable in the way that a creditor's security interest is. I don't really understand that, because it seems to me like one could monetize the cost. I mean, we're talking about maintenance costs. We're not talking about some distinctive, you know, incommensurable natural feature. We're talking about a service of maintaining the bridge. Why isn't that quintessentially something that can be separated from the land and monetized? Well, there are a couple of obligations we need to talk about. It's not just the maintenance obligation. It's also the obligation to rebuild the bridge in case it becomes unstable, as happened here. And then there's the value of the city's reversionary interest. But that reversionary interest may never kick in if the covenant is not breached. So it's all very contingent on future events, and that makes it very difficult to try to monetize during a bankruptcy process. In fact, Amtrak hasn't cited a single case from Bankruptcy, Rail Act, Special Court, anywhere, where the beneficiary of a covenant like this one was involved in a bankruptcy proceeding and had that interest adjudicated in a bankruptcy proceeding. All right. Let me go back to a basic point. Why don't I just stop by reading the difference in language of the Rail Act from the Bankruptcy Act, from the Bankruptcy Code, particularly? Different language. Right. It is different language, Your Honor. But the point is that the phrase free and clear of liens and encumbrances has a standard meaning in the bankruptcy context, even though that's not the language used in the Bankruptcy Act or the Bankruptcy Code. If any Lexis or others will turn up this phrase, and it was involved in the decision the Second Circuit just issued last week in Kepp, there was a conveyance, free and clear of liens and encumbrances, and the Second Circuit held that an easement survived that conveyance under Section 77F. That's the standard rule, and Amtrak hasn't shown that Congress intended anything different in the Rail Act. Why do they have to if they just show a different language? Because this is a special term of art in the bankruptcy context. And if Congress wanted to depart from the accepted meaning... That all assumes, of course, that Congress was deliberately limiting itself to its bankruptcy jurisdiction. And there are several reasons to reach that conclusion. One is the language of the Rail Act itself is not written as an eminent domain statute at all. Conrail is going to receive property. Conrail is a private entity. You conceded that Congress could be acting also in accordance with its Commerce Power. What do you mean by that? Excuse me? You conceded in your brief that Congress was acting not just in its bankruptcy authority, but its Commerce Clause authority. Right. I believe I said perhaps, but that's... Well, perhaps is you. Thank you. I accept it. I mean, Commerce Power, because Congress was involved in trying to create a new system for railroads that were in bankruptcy throughout the Northeast. If they're acting under the Commerce Power, why can't they do everything they would have acted under eminent domain? Because generally, Congress... No, no, not generally. Ask why they could not have acted on everything they did under eminent domain, arguably, through the Commerce Power. They could have... Commerce Power is compensating people for unjust taking. They could have exercised pursuant to eminent... They could have exercised their eminent domain power, but the Supreme Court said they didn't... No, no, no. What about Commerce Power? If they had... Which you say perhaps they used. Let's assume they did. If they used the eminent domain power, yes, Congress would have had power to wipe out all kinds of property interests. No, no. What about the Commerce Power? Not the explicit eminent domain. They used the Commerce Power and get there the same way. I'm sorry. I don't see how exercising the Commerce Power without eminent domain gets them to the same point. Would you then be able to use the Tucker Act for damages if they're acting under the Commerce Power and they do wipe out without making compensation? Eminent domain power sort of presumes the reasonable compensation. If they acted under a different power and caused you damage, could you then use the Tucker Act? There could be claims under the Tucker Act if the value that conveyors of real properties received fell short of the constitutional minimum. And Congress debated that issue and decided to draft the statute the way it did. And the Supreme Court said it's an exercise of the bankruptcy power. And Amtrak has not cited any Tucker claim where the beneficiary of a covenant running with the land was seeking compensation for something that happened during the Rail Act. Excuse me? Have you cited anything with the other one? No, we haven't found any Tucker Act. I don't think you've got four of them. But Amtrak says there must have been a bunch of these covenants running with the land that were affected by the Rail Act. If there were, surely there'd be at least one Tucker Act claim out there. If the Rail Act had the results, then Amtrak says not. Unless they received... Sorry, go ahead. Unless they received in the original, you know, Uber bankruptcy process in whatever it was, the 1970s, in the form of shares in Conrail or Amtrak, something that counts as compensation, in which case there wouldn't be claims. And there's no evidence that Amtrak has cited that any holder of a covenant running with the land received any compensation during the reorganization proceedings or the special court proceedings. What's more likely... Any compensation specific to that issue, but they did receive compensation, did they not? People who conveyed real properties received compensation for the real properties, but there's no evidence that Amtrak or Conrail ever litigated covenants running with the land or that anyone who held a covenant running with the land received compensation for that interest. Why would it be consistent, though, with their position that they got compensated for the whole package and they understood, you know, and it was at that time understood that liens and encumbrances broader than the bankruptcy definition were all being sheared away? That presumes, Your Honor, that the only people who were the beneficiaries of covenants running with the land were the people who owned the land in the first place. The city's not in that situation. The city was a third-party non-debtor with a covenant running with the land. There's no evidence that the city had any notice that the validity of that covenant was going to be at issue in the bankruptcy proceedings. What's more likely, Your Honors, is what this Court found in Wray. Excuse me, one thing I want to interrupt you on. Forgive me. Was it your position in your brief that an encumbrance or a lien under bankruptcy law could be extinguished or could not be extinguished? It could be, but the value of the lien gets attached to the sale proceeds. In other words, if somebody has an encumbrance or a lien in bankruptcy law, it can only be extinguished if you're paid off. That's right, Your Honor. And there's no evidence that any third-party non-debtor as the city was, beneficiary of a covenant running with the land, got paid off during the bankruptcy proceedings. What's more likely is what this Court presumed in Wray. But wait a minute. Wait a minute. Let's just talk about encumbrances and liens. Forget about covenants running with the land. Under the Rail Act, however, there's a much broader power to eliminate encumbrances and liens than is true under the bankruptcy law. Isn't that correct? I believe, Your Honor, no, that it's not correct. Why isn't that correct? It says specifically in the Rail Act the property can pass free and clear of the encumbrance and liens. Because we believe that Congress was invoking that term of art from the bankruptcy reorganization context. So your view is notwithstanding the language of the Rail Act, you could not, that is to say, you could not transfer property free and clear of encumbrances and liens. Notwithstanding the language. It would have to be litigated during the bankruptcy process and it wasn't. There's no evidence that it was. What's more likely, Your Honor, is what this Court said in Ray, that Conrail and Amtrak were well aware of the risk that they would have to perform under covenants running with the land and it was accounted for in the valuation process. And if they got a discount because of covenants running with the land, So your bottom line is you don't think there's any broader authority under the Rail Act than there is under the Bankruptcy Act. That's your bottom line position. There's broader authority in many ways under the Rail Act. That's with respect to property. With respect to liens and encumbrances. Before you ever even get to covenants running with the land. But there's a lot going on in the Rail Act. No, no, no. Just answer the question. You think it's a more limited, that the under the Rail Act, there is no broader power than there is under the Bankruptcy Act with respect to liens and encumbrances. That's right, Your Honor. That's your premise. If you're wrong on that, you lose. There may be some other way to win, but I'm not thinking of it right now. But there's no evidence in the Rail Act or its legislative history that Congress intended to depart from the standard meaning of free and clear. And there's no evidence that Congress meant to infringe upon covenants running with the land. And if I could just make another point, Your Honor. I have just a couple questions. Let me interject. Did New York have any liens that it got paid for? New York City had tax liens. But participating in the bankruptcy with respect to tax liens does not mean that the city was on notice that any covenant running with the land was at issue. And did it, in fact, get paid for those? I'm sorry? Did it get paid? Did it get compensation? Eventually, I assume it did, but I haven't tracked that down, Your Honor. The special court, I wanted to add, the special court is considered to be the expert in Rail Act interpretation, and the special court entered a conveyance order here and it contemplated that Conrail would receive property, rail property, subject to encumbrances that continue to attach to the land. And we believe that's certainly broad enough to encompass covenants running with the land like ours. Just before we get too far off today, the second question. You had made a comment before about the Supreme Court determining that the Rail Act was not an exercise of eminent domain power, but I thought the Rail Act actually said that it was in part enacted as a pursuant to eminent domain power. And I just wondered which Supreme Court case were you referring to? The Rail Act does not say that it's an exercise of the eminent domain power. The Supreme Court case I'm referring to is the Regional Rail Reorganization Act case, the Seminole Supreme Court case on the Rail Act. They rejected all of the arguments for reading, I can give you the citation if you like it, they rejected all of the arguments for reading the Rail Act as an exercise of eminent domain power and they held that Congress clearly intended to legislate pursuant to its bankruptcy power when it enacted the Rail Act. Give that citation. You say you can give the citation. Yes. You're talking about Blanchett v. Connecticut General Insurance Corp. United States Railway Association for Connecticut General Insurance Corp. I believe that's it, but there are a lot of cases with similar names. Yeah, but which citation are you referring to there? I read the case not finding what you argue is it. Well, I'll tell you. At pages 152 to 153 of that case it's 419 U.S. And at pages 152 to 153 the Supreme Court said that Congress clearly intended to legislate pursuant to the bankruptcy power when it enacted the Rail Act's conveyance provisions. At page 149 of 36 Congress... Yes, yes, yes, yes. Yes. But that does not hold. 363 does not state that Congress was limited to the bankruptcy power. It does not say that. Were you referring to 363, Your Honor? Excuse me. Your exact section of the statute is 153, but it's also... These are different reports. You're talking about the Supreme Court case. 419 U.S. 153. Congress enacted these provisions clearly intended to legislate pursuant to the bankruptcy power. That's right. The Supreme Court did not say it was limited to the bankruptcy power, which is why Wray went on to say it was not limited to the bankruptcy power, it being the Rail Act. I don't... Your Honor will certainly correct me if I'm wrong. I don't recall Wray addressing that issue. Well, this is where we start out. Were we not here at the beginning of this argument? Wray talked about liens and encumbrances, but not about which power Congress exercised in the Rail Act. It didn't? I'm sure I've got that too. All right. I thought we read it earlier. I thought there were several cases referring to both commerce power and eminent domain power, but that's helpful to just have that citation. But you were moving on to make another point when I interjected, just because I wanted to know which case you were referring to. So why don't you... Okay. If I can just wrap up the earlier point. The Supreme Court said in four or five different places in the RRRA case that Congress was legislating pursuant to the bankruptcy power and rejected all of the eminent domain arguments. I think I made the point that I wanted to make regarding the special court's conveyance order here, contemplating that Conrail would receive property subject to encumbrances that continue to attach to the land. And we believe that's broad enough to include the city's covenant here. I will save the rest of my presentation for rebuttal. Thank you. Good morning, Counsel. Is it JARCO or JARCHO? It's JARCHO, Your Honor. JARCHO. You're with me as Dennis Moore from the Amtrak Law Department. May it please the Court. In the RAIL Act, Congress used strong language to effectuate a fresh start for Conrail and Amtrak, directing that rail properties shall be conveyed to them free and clear  The plain meaning of the term is that the rail properties shall be conveyed to them free and clear The term encumbrance, confirmed by this Court's definition of the term in Ray, establishes that the bridge replacement liability asserted by the city was not transferred to Amtrak Congress's fundamental purpose in enacting the RAIL Act was to remedy a systemic financial crisis by reaching well beyond the bankruptcy process May I suggest, Counsel, that you not read your argument? Just give us your views on your opposing counsel's position. Well, let me start with Ray, Your Honor. Obviously, Your Honor, is correct that a definition was provided by this Court of the terms lien and encumbrance and the definition of encumbrance in Ray was that an encumbrance is any right to or interest in land which may subsist in another to the diminution of its value The city does not deny that if that definition is applied here, they lose, because it's obvious that these interests in land would diminish the value of the land. Instead, it does argue for a different definition that is inconsistent in Ray. And as Your Honor pointed out, you cannot have two different definitions of the same term in the same statute. We even filed a 28-J letter in which the Office of Chief Counsel case holds that it's arbitrary and capricious for an agency to provide two different definitions of the same statute. All that's changing here is that the same definition is being applied to different facts and those facts establish that that this interest is extinguished. And also, as Your Honor pointed out, this definition was considered in the context of bankruptcy issues. Are you contending or relying on a contention that Congress was acting under its eminent domain power? Your Honor, we do contend that it was acting under both the bankruptcy and the eminent domain power. You've read Blanchett vs. Connecticut General. You've read Blanchett vs. Connecticut General? Yes. The case of Blanchett vs. Connecticut General in the Supreme Court that was cited and discussed in your opposing counsel argument. You have read that, have you not? Yes, Your Honor. And does it not, as your opinion, substantially dispense with any argument that Congress was acting personally to the eminent domain power? I don't think so, Your Honor. I'm not much of a footnote person, but footnote four in that the reasonable objection must be based upon the facts arising from the original proof applied by the Court. The omission in the Rail Act of this very limited right of objection cannot constitute the act in eminent domain statute. They were thoroughly dispensing the background of it being eminent domain and it doesn't seem I'm not sure they left any argument standing that it was eminent domain power after they got through with discussing that issue with Blanchett. Your Honor, Judge Friendly respectfully disagreed with that conclusion in the Norwich and Worcester case. I don't care whether he disagreed with it or not. And there are references elsewhere in the opinion to the Tucker Act page 126 the Tucker Act the reference to takings erosion takings and so on and as Judge Silberman indicated, references to legislating under the bankruptcy power did not mean references to exclusively legislating under the bankruptcy power. There were numerous other references in the case to lead to the conclusion that the eminent domain power under the bankruptcy power was being invoked and that was the conclusion that Judge Friendly reached when addressing this exact same issue about the meaning of the Supreme Court's decision in the Norwich and Worcester case. Do you lose do you concede you lose if Congress was acting only pursuant to the bankruptcy power? Absolutely not, Your Honor. This is a case of statutory interpretation and there's absolutely no showing that Congress did not have authority under the bankruptcy power to extinguish this interest. As the district court held, there's no reason to believe that the bankruptcy code asserts the full extent of the bankruptcy power and so just because this goes farther than the bankruptcy code really doesn't matter. What about the New York cases, Oyster Bay and is it the 2008 City of New York v. Amtrak case why shouldn't we apply the reasoning of those cases? The earlier Amtrak case, Your Honor, was a very different case because it involved an easement and as we point out in our briefs easements were specifically transferred by agreement in the deeds there are different types of interests at issue here and for that reason the district judge in the southern district of New York where this case was originally filed held that that decision which had been binding on him he held that the references to liens and encumbrances were dicta which in fact they were. The district court below held that the decision of the eastern district in that case also wasn't applicable because it was inconsistent with Wray. It took exactly a contrary view of what a lien or encumbrance was to what this court held in the Wray case. And Wray, there's a distinction there between in rem and in personam that gives you I think some room to distinguish that case now. Well, to distinguish which case. Wray. Your Honor, it was addressing in personam liability, but it was addressing a liability in the context of a pre-rail act liability. The question was did it transfer and the court rejected looking at the rail act, looking at the bankruptcy code because it used different language. So it came up with a definition that there's no reason to believe that the court thought should change from case to case and it obviously applies with full force here in our view. What happened if there is eminent domain power and if these encumbrances were dissolved at the time of the rail act? No compensation? Well, no, Your Honor. There are two possible answers to that. First, it remained behind as a liability of the Penn Central and as we point out in our brief, the city was involved in the Penn Central bankruptcy proceeding as a claimant. Now, if they decided not to file a claim in that case, it could be because it was only in 2009 they decided that this liability was ours. At the time that the ongoing bankruptcy proceedings were going on, they believed that the basis for regenerating a bankruptcy claim after the bankruptcy has closed. If the claim had not been allowed by the bankruptcy court and had not been discharged in bankruptcy, it would have remained a liability of the reorganized Penn Central, which is doing business today as American premier underwriters. It is a company that holds many of the assets that used to belong to Penn Central unrelated to real properties. The city, I suppose, may have a claim against American premier underwriters if their liability still exists, but it does not pass to Amtrak under the Rail Act. I'd like to spend a minute talking about the colloquy about whether this interest is monetizable. Now, we don't think obviously that the bankruptcy code principles apply as we've indicated, but in the very last page of the government's complaint, they assign a $25 million figure to this very liability, thereby acknowledging that they believe that this is a monetizable interest, such that even under the bankruptcy principles, it would be extinguished. What's your position on their claim for restitution? The claim for restitution, Your Honor, they've acknowledged that they've abandoned the theory of restitution that they asserted in the district court, and under the case law that we've cited in our brief, it's too late to come up with a new theory now. There are no extraordinary circumstances that precluded them from asserting that theory of liability in the district court. What if it were considered just a different way of analyzing the same claim? Would it not then still be live? Your Honor, we think that they would have to have extraordinary circumstances to assert that claim, and there are no such circumstances here. Your answer to the question has to depend on whether or not these are simply variations on the same claim, whether it's indemnification, restitution, whatever. Your answer has to be these are analytically entirely different. They are analytically entirely different in the sense that they have different elements. They have different elements. The essence of the element that the district court held that they did not meet under the restitution below was this emergency assistance element that there had to really be an emergency, and this was a process that unfolded over time, over 10 to 15 years, so that on its face no reasonable jury could conclude that this was an emergency. That was an essential element of their claim, and they're shifting the cause of action on appeal. To what? To an unjust enrichment claim, and as we point out in our brief, in this forced account agreement that the parties agreed to, the city agreed to pay the reasonable cost of this collateral work associated with the rebuilding of the bridge, such that they have waived that claim through that agreement. I thought they paid that more or less under protest. That's why it's a what is it called? A forced account that they said we're going to do this. That obviously has to be done, but we're going to continue to preserve our claim that you owe. Well, Your Honor, there was a clause that said that liability is not foreclosed through the structure of the agreement was that reasonable costs would be paid. There was a ceiling on what those costs would be. If the costs went over, there was no obligation of the city to pay, and if the city didn't pay, there was no obligation of Amtrak to undertake those responsibilities. That's a kind of a mitigation mechanism built in, which makes sense. Everybody's got to be frugal if we're not sure who's going to be paying this in the end. But I don't see that you can rely on the fact that they fronted the cost to be a waiver of their claim. It wasn't simply that they fronted costs. It's that they agreed to pay the reasonable costs of this work. Kind of under protest, more or less. That's why I read it, too. But isn't that a more difficult question for us? Your basic argument is this issue was not raised below. The issue was not raised below. You're now going to the merits to say even if it came to us, you would win. Exactly, Your Honor. But your primary argument I'll take this. So I'll stop. I'll stop. That actually is a reason why we do not review claims that were not raised below. The fact that you've not had a chance to develop that kind of record. Would that not be correct? That's true, Your Honor. The argument of it, to be clear, the argument about the force account agreement was addressed below in a different context. But the unreasonable, the unjust enrichment claim was not raised below. And are there facts that are significant to that? What facts would you want to see developed on a restitution? Or is it just a pure question of law? Why does it make a difference? Your Honor, I don't think it would make a difference because the underlying duty that they are relying on, which is this utility law duty, utility rule duty, the agreement did not bind Amtrak to pay anything. Neither. The agreement is a status quo maintaining nullity, as far as I'm concerned, on this issue. But just looking at the restitution question, You mean the unjust enrichment, don't you? Unjust enrichment, restitution, they claim restitution. The unjust enrichment claim, Your Honor, is premised upon a claim that there is a duty under common law called the utility rule. Which, as we point out in our brief, does not apply here as a matter of law, because that is a rule that applies when there is a city street or other property that another party is given the privilege of putting equipment in, and by virtue of having been given that equipment, it has to remove it if the city wants to repair its street or property. Here, as we point out in our brief, the fixtures that we're talking about were in Amtrak's property. They were not in the city's property. Forgive me, I'm getting a little confused. Which is the claim made in the Court of Appeals that you think was not made below? The claim that they're entitled to compensation for unjust enrichment based on this utility rule. And it's strictly based on the utility rule? Correct. That issue was not raised below? That's correct. That's the only issue before us, is the unjust enrichment based on the utility rule? That's correct. And their argument would be, okay, if the bridge is ours, you've put your electrical fittings first on the bridge and now hovering right near the bridge, we can't we're letting you be there, but we can't  those things out of the way. I'm not sure what their argument would be, Your Honor, but the facts are, which are in the brief, the fixtures were in our space and were only installed for the city's benefit to protect the bridge from being associated with the electrical current running through the wires. This was not something that was done for our benefit. And that's why the utility rule was on. You need the electrical current, though. You need the electrical current, so in that sense, it's done for your benefit. But the electrical current is in our property. It's not in the city's property. Now, the procedural posture of this case is, it was on summary judgment that it was decided below. Right? Correct. As far as not raising the argument below, does that doctrine apply with muted force in the case of a summary judgment, which we can decide in OVO anyway? Your Honor, as I understand it, the doctrine is that there have to be extraordinary circumstances to raise a new issue. Does that apply with muted force when it's a summary judgment, where we're deciding, or can decide everything in OVO anyway? The court certainly can, so the court is certainly entitled to do so. Thank you, Your Honor. Does Mr. Schor have rebuttal time reserved? He sought to reserve time. We'll give you two minutes, Mr. Schor. Thank you. There's no evidence that Congress intended the fresh start for a clean slate policy here to wipe out the covenants running with the land. The clean slate policy was directed to something quite different. It was relieving Conrail and Amtrak from some of the burdens, impediments, to Penn Central surviving. And Congress never said the covenants running with the land constituted one of those impediments, or that honoring them was going to sacrifice the ability of Conrail and Amtrak to conduct that policy. How about the reversionary interest, whereby you take over the property from Amtrak? The reversionary interest is built into the deed. It survived the conveyance. It's unlikely, I think, Your Honor, that the city would actually take back that land. That's for sure, because that would stop the train. Nevertheless, as the authority recited in our brief, the city wasn't limited to that remedy. The city could sue for breach. But your point, of course, your point, that undermines your basic point, doesn't it? The reversionary interest would, sure, raise hell with the operation of Amtrak. The reversionary, whether or not that's true, Your Honor, the reversionary interest exists. It's part of the deed. Amtrak took the deed. They took it subject to all of the covenants and the reversionary interest. There is no legislative history and nothing explicit in the Rail Act stating any intent by Congress to eviscerate state-created property interests. Those are, after all, constitutionally protected. If there had been an intent to do that, you'd expect to see it expressed, at least in the preemption provision of the Rail Act, which makes no reference to state property rights. Just on the question of the restitution, if we look past the figure to raise it and actually consider the claim, what is your best doctrine for saying you're entitled to restitution? You're running out of time, so be brief. Yes, I understand. First, I do want to say that we did argue the public utility rule. It's on page 20 of our opposition memorandum submitted to the district court. That was certainly raised. The question is whether we should have argued our restitution theory a bit more broadly, and we should have. But that restitution theory can be decided by this Court in this case because it rests on a determination the district court made, which is that Amtrak breached its duty under the public utility rule. If we agree with the district court. Yes, that's right. If we agree, because that's on DeNovo, too. That's right, Your Honor. But it's an issue the district court decided. It's an issue of pure law, and it rests on undisputed facts. And your claim, then, your best claim is the public utility rule, right? For the alternative argument that we're at least entitled to our force account costs because we performed a duty that was Amtrak's to perform. Now we need to be If they're not covered by the public utility rule, then you don't get that. That's right, Your Honor. The public utility rule is what gave them that duty to get out of the way when we needed to repair the bridge. And the language of the force account I don't understand that to be calling me right. I said if they're a multi-public utility, you don't get that. Is that correct? If they don't fall under the public utility rule, that's right. But under the cases we cited, they do. I understand you may disagree, Your Honor. I'm sorry if I missed something. I can see why you'd rather I answer it. If you'll give me another chance, I'll agree. Yes, if the public utility rule doesn't apply, then that restitution argument doesn't work. But the force account agreement does certainly reserve the city's right to sue Amtrak for those force account costs. That's what the district court held, and it was correct. If there are no further questions, I'll rest on my brief. Thank you, Mr. Jerkoff. Thank you. Case is submitted.
judges: Pillard, Silberman, Sentelle